ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff
BYRON HACK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BYRON HACK, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>UNITEDHEALTH GROUP INC.; UNITED HEALTHCARE SERVICES, INC.; and UNITEDHEALTHCARE INSURANCE COMPANY;<br><br>           Defendants. | Case No.:<br><br>**COMPLAINT FOR RECOVERY OF ERISA PLAN BENEFITS; ENFORCEMENT AND CLARIFICATION OF RIGHTS; AND BREACH OF FIDUCIARY DUTY**<br><br>**CLASS COMPLAINT** |

Plaintiff, Byron Hack, on behalf of himself and all others similarly situated, herein sets forth the allegations of his Complaint against Defendants UnitedHealth Group Inc., United HealthCare Services, Inc., and UnitedHealthCare Insurance Company.

## INTRODUCTION

1.     Defendant UnitedHealth Group Inc., through its wholly-owned subsidiaries, including Defendants United HealthCare Services, Inc., and UnitedHealthcare Insurance Company (collectively "United" or "Defendants"), is a fully integrated company that is in the business of insuring and administering health insurance plans, most of which are employer-sponsored and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. ("United Plans" or "Plan").

2.     Under the terms of all United Plans, United is obligated to make benefit payments from its own assets (in the case of fully-insured United Plans) or the assets of the Plan itself (in the case of self-insured United Plans) when someone insured by one of those Plans obtains health care treatment that is covered by the terms of that Plan. With respect to all United Plans, United serves as the claims administrator, responsible for determining whether any claim is covered by any particular United Plan and effectuating any resulting benefit payment. As such, Defendants are ERISA fiduciaries with respect to all United Plans, including the Plan issued to Plaintiff Byron Hack.

3.     Plaintiff brings this individual and class action to redress Defendants' repeated violations of ERISA resulting from their systemic practice of denying services for lumbar artificial disc replacement (ADR) surgery on the basis that such services are "unproven." Defendants have developed and used a mandatory guideline, the "Medical Policy" on "Total Artificial Disc Replacement for the Spine," which provides that lumbar ADR is not safe and effective and excluded as such under all United Plans. Under this guideline, Defendants have systematically

1

denied all requests for lumbar ADR surgery as not safe and effective. Contrary to Defendants' position, lumbar ADR surgery has been approved by The United States Food and Drug Administrations ("FDA") for nearly ten years and is a safe, effective and often recommended procedure that has successfully treated the symptoms of lumbar disc disease.

## JURISDICTION AND VENUE

4.     This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed by ERISA. Subject matter jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

5.     The Court has personal jurisdiction over Defendants because ERISA provides for nationwide service of process, and each defendant has minimum contacts with the United States. *See* 29 U.S.C. § 1132(e)(2).

6.     The claims of Plaintiff and the putative class arise out of policies Defendants issued, administered, and/or implemented in this District. Moreover, one or more defendants reside in this District. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (setting forth special venue rules applicable to ERISA actions).

## THE PARTIES

7.     Plaintiff was at all relevant times covered under the Quantum Corporation health benefit plan (Group Number: 702428) (the "Plan"), an employee welfare benefit plan regulated by ERISA and pursuant to which Plaintiff and his beneficiaries are entitled to health care benefits.

8.     Defendant UnitedHealth Group Inc. is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota 55345. It issues, administers, and makes benefit determinations related to ERISA health care plans around the country through its various wholly-owned and controlled subsidiaries, including

Defendants United HealthCare Services, Inc., and United HealthCare Insurance Company. Defendant UnitedHealth Group Inc. operates as, and owns the trademark to, "UnitedHealthcare."

9.     Defendant United HealthCare Services, Inc. is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota 55345. It is a wholly-owned and controlled subsidiary of Defendant UnitedHealth Group Inc. Through and in combination with its state-level UnitedHealthCare subsidiaries, affiliates, and agents, it issues and administers health care plans, including employer group health plans and employer ancillary and specialty benefits plans, which are governed by ERISA.

10.     Defendant United HealthCare Insurance Company is a wholly-owned subsidiary of Unimerica, Inc., which is wholly-owned and controlled by Defendant United HealthCare Services, Inc. It is the underwriter of insurance provided by United HealthCare Services, Inc. and its state-level subsidiaries/affiliates. It participates in the claims administration process related to United Plans insured or administered by such subsidiaries/affiliates, and issues and administers other United Plans, most of which are governed by ERISA.

11.     Defendants, other than UnitedHealth Group Inc., do not operate independently and in their own interests, but serve solely to fulfill the purpose, goals and policies of Defendant UnitedHealth Group Inc.

## SUBSTANTIVE ALLEGATIONS

### A.     Plaintiff's United Plan

12.     At all relevant times, Plaintiff and the members of the Plaintiff Class were covered by a health policy or plan, either self-funded or fully-insured, issued and administered by Defendants which provided medical and surgical benefits. The health plan sets forth the terms and conditions of coverage. Included within the health plan are various exclusions including one that excludes coverage for services that are "unproven."

3

13.     According to Plaintiff's United Plan, plan administrators Quantum Corporation and "UnitedHealthcare" have the sole and exclusive discretion to: (1) interpret benefits under the Plan; (2) interpret the other terms, limitations and exclusions of the Plan; and (3) make factual determinations related to the Plan and its benefits.

14.     At all relevant times, Plaintiff's daughter, Christina Hack, was a covered beneficiary under the United Plan issued to Plaintiff.

**B.     Lumbar ADR**

15.     Traditionally, surgeons recommended a spinal fusion to treat degenerative lumbar disc disease. Fusion, however, causes a lack of mobility at the fused disc level and, consequently, more stress on the adjacent disc levels, leading to a greater risk of additional disc herniation/disease.

16.     With artificial disc replacement (ADR), the diseased disc is replaced with an artificial disc that maintains the integrity of the disc space while providing the flexibility of a natural disc.

17.     The United States Food and Drug Administration ("FDA") has approved at least two implant devices for use in lumbar ADR surgeries. The following lumbar disc replacement products have received FDA approval:

(a)     The PRODISC-L Total Disc Replacement (Synthes Spine) received FDA Premarket Approval on August 14, 2006 for use in patients who have single-level degenerative disc disease of the lumbar spine (L3-S1).

(b)     The activL Artificial Disc (Aesculap Implant Systems, LLC) received FDA Premarket Approval on June 11, 2015 and is also for use in patients who have single-level degenerative disc disease of the lumbar spine (L4-L5 or L5-S1).

18.     The Premarket Approval (PMA) process is rigorous and applies to all Class III medical devices such as the PRODISC-L and the activL. Class III medical devices are devices which, by definition, present significant risks to human health.

These devices must therefore meet the FDA's most stringent safety standards before they are approved for commercial sale and distribution.

19.     Single-level ADR is widely recognized in the medical community and by providers throughout the nation as a viable, safe and effective treatment for degenerative disc disease. With the FDA's approval of the PRODISC-L in 2006, single-level ADR has been approved as an accepted form of medical treatment for nearly a decade. The PRODISC-L and activL artificial discs have been used in thousands of spinal arthroplasties and have been proven to be safe and effective in the treatment of degenerative disc disease.

### C.     Defendants' categorical denial of members' requests for lumbar ADR

20.     Despite the safe and effective use of lumbar ADR, Defendants have categorically denied all requests for the surgery on the basis it is not safe and effective. Defendants have developed and used a mandatory guideline, the "Medical Policy" on "Artificial Total Disc Replacement for the Spine," to conclude that lumbar ADR is "unproven" and excluded under United Plans in all circumstances.

21.     Under this Medical Policy, Defendants have systematically denied all requests for lumbar ADR as "unproven." Contrary to Defendants' position, lumbar ADR surgery is a proven safe, effective, and often recommended procedure that has successfully treated the symptoms of lumbar disc disease.

### D.     Defendants deny coverage of lumbar ADR for Christina Hack

22.     When she was 18 years old, Christina Hack suffered from intense back pain due to a damaged lumbar intervertebral disc at the L4-L5 site of her spine.

23.     To address Ms. Hack's condition, Plaintiff and Ms. Hack consulted with Dr. Patrick Johnson at Cedars Sinai Spinal Institute in or around May of 2011. Dr. Johnson recommended that Plaintiff proceed with lumbar ADR at the L4-L5 site on her spine using an FDA-approved medical device. Ms. Hack was informed of all

the risks, benefits and options associated with the procedure by Dr. Johnson. Plaintiff elected to proceed with the procedure.

24.    On June 2, 2011, Defendant United Healthcare Services, Inc., "on behalf of UnitedHealthcare," sent via letter, through its Cypress, California location, a denial of coverage for the surgery. Relying on Defendants' "Artificial Total Disc Replacement for the Spine" Medical Policy, the letter stated that the requested surgery "is not proven to be a safe and effective treatment in your situation. Unproven treatments are not covered by your health plan medical policy."

25.    Plaintiff appealed. On June 21, 2011, "UnitedHealthcare" affirmed the initial denial of Plaintiff's request for lumbar ADR surgery on Ms. Hack's behalf. The basis for the affirmance was the "UnitedHealthcare policy for Artificial Total Disc Replacement for the Spine," under which lumbar ADR surgery is categorically deemed "unproven" and "not a covered benefit."

26.    By November 2011, Christina's damaged disc was bulging, and was fully herniated by March 2012 when Christina was home from college for spring break. This resulted in continuous back pain and constant nerve pain down Christina's left leg, including several instances where Christina could not move her left leg and was forced to drag it in order to walk.

27.    Dr. John Regan, another spine surgeon with whom the Hack family consulted, concluded that Christina needed lumbar ADR immediately. Nevertheless, on April 2, 2012, Defendant United Healthcare Services once again sent via letter through its Cypress, California location, denying coverage for surgery. Relying again on Defendants' "Artificial Total Disc Replacement for the Spine" Medical Policy, the letter used identical verbiage in stating that the requested surgery "is not proven to be a safe and effective treatment in your situation. Unproven treatments are not covered by your health plan medical policy."

28.    Plaintiff appealed. However, due to the seriousness of Christina's condition and her immediate need for surgery, Christina underwent lumbar ADR

surgery on May 25, 2012. The surgery was performed by Dr. Regan. Due to Defendants' refusal to cover the procedure, Plaintiff was forced to pay thousands of dollars for the surgery.

29.     On June 1, 2012, "UnitedHealthcare" affirmed its denial of Plaintiff's request for lumbar ADR surgery on Ms. Hack's behalf. Once again, the basis for the affirmance was the "UnitedHealthcare policy for Artificial Total Disc Replacement for the Spine," under which lumbar ADR surgery is categorically deemed an "unproven" service.

30.     Plaintiff sought reimbursement for the surgery from Defendants. However, on August 2, 2012, Defendants rejected Plaintiff's request "based on the UnitedHealthcare Policy for Artificial Total Disc Replacement for the Spine [and the exclusion for] Experimental, Investigational and Unproven Services."

**E.     *Hill v. UnitedHealthcare Insurance Company***

31.     In *Hill v. UnitedHealthcare Insurance Company*, Case No. SACV15-00526 DOC (RNBx), a pending federal action venued in the Central District of California, Southern Division, the plaintiff alleges that Defendant United Healthcare Insurance Company violated ERISA by systematically and categorically denying requests for lumbar ADR surgery on "unproven" grounds. The *Hill* action was filed on April 3, 2015.

32.     On March 21, 2017, the court certified a class consisting of United insureds whose claims are governed by the *de novo* standard of review under ERISA. The court did not include in the class those United insureds whose plans are subject to an abuse of discretion standard of the review on the basis that Ms. Hill's claim, subject to a *de novo* standard, was not typical of their claims. United takes the position that self-insured United Plans that contain discretionary review language, such as Plaintiff's plan, are subject to the abuse of discretion standard and, hence, claims for lumbar ADR arising under them fall outside of the *Hill* class.

///

### CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action on behalf of herself and all others similarly situated as a Class Action pursuant to Federal Rules of Civil Procedure Rule 23. Pursuant to Rule 23(b)(1) and (b)(2), Plaintiff seeks certification of a class defined as follows:

> All persons covered under United Plans, governed by ERISA, self-funded or fully insured, whose requests for lumbar artificial disc replacement surgery were denied at any time within the applicable statute of limitations, or whose requests for the surgery will be denied in the future. Excluded from this definition are persons who are part of the *de novo* class certified in *Hill v. UnitedHealthcare Insurance Company*, Case No. SACV15-00526 DOC (RNBx).

34.     Plaintiff and the Class reserve the right under Federal Rule of Civil Procedure Rule 23(c)(l)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

35.     This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

**A.     Numerosity**

36.     The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of individuals covered under United Plans who have been similarly affected.

**B.     Commonality**

37.     Common questions of law and fact exist as to all members of the proposed class.

**C.     Typicality**

38.     The claims of the named Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly affected by Defendants' wrongful conduct.

**D.     Adequacy of representation**

39.     Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiff are competent and experienced in litigating large and complex class actions.

**E.     Superiority of class action**

40.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed Plaintiff Class is not practicable, and common questions of law and fact exist as to all class members.

41.     Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**F.     Rule 23(b) requirements**

42.     Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for Defendants.

43.     Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

///

///

9

44.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**FIRST CLAIM FOR RELIEF**
**FOR DENIAL OF PLAN BENEFITS AND FOR CLARIFICATION OF RIGHTS UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(1)(B)]**

45.     Plaintiff and the Class repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

46.     29 U.S.C. § 1132(a)(1)(B) entitles Plaintiff to recover benefits due and to enforce and clarify her rights to the benefits at issue.

47.     As set forth above, Defendants categorically deny all requests for lumbar ADR based upon their position (set forth in their Medical Policy) that lumbar ADR surgery is "unproven" and excluded under all United Plans.

48.     Defendants improperly denied Plaintiff's request for lumbar ADR surgery on the basis it is not safe and effective and excluded under Plaintiff's United Plan. Defendants have applied and continue to apply their own internal clinical guidelines in a manner which restricts access to lumbar ADR surgical treatment for individuals with degenerative disc disease, a practice wholly inconsistent with the terms of Plaintiff's United Plan. The terms of Plaintiff's health plan do not permit Defendants to sweepingly categorize FDA-approved procedures like lumbar ADR surgery as not safe and effective.

49.     There is now due and owing to Plaintiff benefits, interest, and attorneys' fees in an amount to be determined at the time of trial.

50.     On behalf of the class, Plaintiff seeks a clarification of rights relating to Defendants' categorical denial of lumbar ADR surgery as "unproven" pursuant to their Medical Policy.

///
///

## SECOND CLAIM FOR RELIEF FOR BREACH OF FIDUCIARY DUTY AND EQUITABLE RELIEF UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(3)]

51.     Plaintiff and the Class repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as is fully set forth herein.

52.     Defendants act as ERISA fiduciaries with respect to the administration and claims decisions of the group health polices issued to employers, such as the policy at issue, within the meaning of 29 U.S.C. § 1109(a) and 1002(21)(A). With respect to these policies, Defendants exercise discretionary authority or control respecting management of the plans, and exercise authority and control respecting management or disposition of the plans' assets. Defendants have the authority, and actually exercise the authority, to fund the plans, make decisions on claims for benefits and appeals thereof, and to write checks for benefits.

53.     Defendants have categorically and improperly denied class members' requests for lumbar ADR surgery, as alleged above.

54.     In acting and failing to act as described above, Defendants have breached their fiduciary duties.

55.     Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek declaratory, equitable and remedial relief as follows:

a.     An order declaring that Defendants' policies and practices, as alleged herein, violate ERISA and the terms of the United Plans;

b.     An injunction compelling Defendants to: (1) retract their categorical denial basis for lumbar ADR; (2) provide notice of said determination in the form and manner required by ERISA to all class members who have had requests for lumbar ADR denied; and (3) provide for the re-review of all improperly denied claims;

c.     An accounting of any profits made by Defendants from the monies representing the improperly denied claims and disgorgement of any profits;

d.     Such other equitable and remedial relief as the Court may deem appropriate; and

e.     Attorneys' fees in an amount to be proven.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff and the Class pray for judgment against Defendants as follows:

1.     Payment of health benefits due to Plaintiff;

2.     A clarification of rights to future benefits under the plan for all class members;

3.     Injunctive and declaratory relief for all class members, as described above;

4.     An accounting of any profits made by Defendants from the monies representing the improperly denied claims and disgorgement of any profits;

5.     Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

6.     Payment of prejudgment and post-judgment interest as allowed for under ERISA; and

7.     For such other and further relief as the Court deems just and proper.

DATED: May 24, 2017                          GIANELLI & MORRIS


By:   /s/ Adrian J. Barrio
ROBERT S. GIANELLI
JOSHUA S. DAVIS
ADRIAN J. BARRIO
Attorneys for Plaintiff,
BYRON HACK